LOWITZ v. KIMMERLE.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1915.)

No. 2533.

1. REMOVAL OF CAUSES ⟐97—SERVICE OF PROCESS—ATTACHMENT.

Under Comp. Laws Mich. 1897, § 10572, providing that if it appear by the return of a writ of attachment that any property has been attached and that neither of the defendants can be found plaintiff shall, within 30 days unless defendants sooner appear in the suit, cause a notice to be published, which notice shall state the names of the parties, etc., and shall be published for six consecutive weeks, and that if plaintiff shall neglect to cause such notice to be so published the attachment shall be dismissed, where on the day the writ was returned defendant appeared specially by petition to remove the cause to the federal court, but the attachment notice entitled in the state court was thereafter published and the case was not certified to the federal court until after such publication was made and the proof of publication had been filed, a motion to set aside the service of the writ of attachment was properly denied; as, though the case was not pending in the state court after the filing of the petition for removal, the publication of the notice was not a court proceeding, but was wholly ministerial and extrajudicial, and if plaintiff could not give the statutory notice of attachment until the case was docketed in the federal court defendant might defeat the suit by delaying the petition to remove, while due publication was running, until after the 30 days for the first publication had expired.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 206, 208-211; Dec. Dig. ⟐97.]

2. APPEARANCE ⟐24—REMOVAL OF CAUSES ⟐112—SPECIAL APPEARANCE—JURISDICTION ACQUIRED.

A special appearance by defendant for the purpose of removing a cause to the federal court did not operate to submit his person to the jurisdiction of the state court or deprive him of the right to object to the sufficiency of the service prior to such appearance.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 118-143; Dec. Dig. ⟐24; Removal of Causes, Cent. Dig. § 238; Dec. Dig. ⟐112.]

3. COMPROMISE AND SETTLEMENT ⟐23 — EVIDENCE — WEIGHT AND SUFFICIENCY.

Where plaintiff claimed that a settlement was had between him and defendant concerning various transactions between them, and that, taking into account a farm conveyed by him to defendant about that time, it was agreed that defendant owed him a specified amount, the fact that the deed to the farm was recorded before the date of the alleged settlement was not as matter of law controlling that no settlement was made, but only affected the credibility of plaintiff's testimony.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 91-94; Dec. Dig. ⟐23.]

4. FRAUDS, STATUTE OF ⟐33—AGREEMENTS TO ANSWER FOR ANOTHER'S DEBT—CONSIDERATION.

An agreement by plaintiff and defendant to share equally in the profits and losses of a business venture, in carrying out which a corporation was organized, was not void for want of a consideration or as an agreement to pay the debt of another within the statute of frauds, if the agreement was made at or before the organization of the corporation.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50-53, 56; Dec. Dig. ⟐33.]

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. Contracts ⬲29—Evidence of Agreement—Question for Jury.

In an action to recover an amount claimed to be due plaintiff under an alleged settlement of various transactions between him and defendant, evidence *held* sufficient to make a question for the jury as to whether defendant agreed at the time a business venture, in carrying out which a corporation was organized, was undertaken, to share the profits and losses thereof with plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 141–143, 1824; Dec. Dig. ⬲29.]

In Error to the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Action by Charles H. Kimmerle against Elick Lowitz. Judgment for plaintiff, and defendant brings error. Affirmed.

C. M. Wilson, of Grand Rapids, Mich., for plaintiff in error.
H. F. Williams, of Chicago, Ill., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

KNAPPEN, Circuit Judge. [1] Defendant in error (hereinafter called plaintiff) brought suit in attachment under chapter 292 of the Compiled Laws (1897) of Michigan, in a court of that state; the defendant being a nonresident thereof. The writ was returnable April 24, 1911. On April 28th the sheriff filed his return, showing levy upon defendant's real estate within the county, that he was unable to find defendant therein, and so left a certified copy of the attachment at his last-known place of residence in the county. The pertinent provision of the Michigan statutes (section 10572) required the plaintiff within 30 days after the return, unless the defendant should meanwhile appear, to cause notice to be published in a newspaper printed in the county, stating "the names of the parties, the time when, from what court, and for what sum the writ was issued, and when the same is returnable," the notice to be published for six successive weeks; failure to so publish (in the absence of personal service of such notice on the defendant wherever found) works dismissal of the action. On May 4th (and thus within the statutory period) publication of notice was begun, and was continued for the proper period and until June 15th; affidavit of publication being filed August 26th.

Meanwhile, on April 28th (being the day the sheriff's return was filed), defendant appeared specially by petition to remove the cause to the federal court by reason of diversity of citizenship of the parties; bond thereon being filed and order of removal made on the same date. The case was, however, not certified to the federal court until September 8th, which was 11 days after the filing of proof of publication of notice in the state court; the transcript from the state court not being actually filed in the court below until September 18th. Four days later defendant moved specially in the court below to set aside the service of the writ, for the reason (as well as another not now important) that at the time the notice of attachment was given and published no suit was pending in the state court, and that no valid proceeding could be taken in the case in any court until the filing of the record

in the court below. Judge Denison, then District Judge, denied the motion. Upon issue joined on the merits plaintiff obtained verdict and judgment, which, as well as the denial of the motion referred to, are here for review.

[2] 1. We think the motion to set aside the service of the writ of attachment was properly denied. True, the attachment notice was entitled in the state court, and the case was not, strictly speaking, pending in that court; the removal petition and proceedings thereunder having deprived that court of jurisdiction to proceed further therein; and under the Michigan decisions the attachment lien would be lost unless the statutory proceedings were strictly complied with (Millar v. Babcock, 29 Mich. 526); and of course the special appearance for purposes of removal did not operate to submit defendant's person to the jurisdiction of the state court, or deprive him of the right to object to the sufficiency of the service thus far had (Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Clark v. Wells, 203 U. S. 164, 171, 27 Sup. Ct. 43, 51 L. Ed. 138). But, as pointed out by Judge Denison in his opinion, the publication of the notice was not a court proceeding, but was "wholly ministerial and extrajudicial." It is thus immaterial that the order for removal in terms stayed further proceedings in the state court, for that court did not further proceed. The infirmity of the proposition that plaintiff was powerless to give the statutory notice of attachment until the case was docketed in the court below appears from the consideration pointed out by Judge Denison that under such rule a defendant would have it in his power to utterly defeat the suit by delaying petition to remove, while due publication was running, until after the 30 days for the first publication had expired: for, in such case, six weeks' publication of notice, as of a case in either court, would be impossible within the statutory period. Plaintiff's failure to docket the case in the court below on his own motion, without waiting for action by defendant, should not of itself be sufficient to nullify the effect of the statutory notice actually given. The fact that the notice was entitled in the state court, rather than in the federal court, was, under existing circumstances, entirely immaterial to any rights; for, assuming for the purposes of this opinion that it was essential that constructive notice be given of a proceeding of which defendant already had actual notice, and on which he acted under petition for removal (see otherwise Clark v. Wells, supra, 203 U. S. at page 172, 27 Sup. Ct. 43, 51 L. Ed. 138, decided under the Montana statute), it is clear that the notice was sufficiently informing. It could not have misled, as would a notice entitled in a different state court.

2. As to the merits: The following facts are substantially undisputed: Plaintiff and defendant were friends, the former residing at Cassopolis, Mich., the latter at Chicago, with a summer home at Cassopolis. In November, 1907, the Kimmerle Concrete Machinery Company was incorporated in California under the laws of that state, with a capital stock of $30,000, of which plaintiff took $5,000 (par value), paying therefor $3,200. Defendant took a like amount of stock, paying therefor $1,500, in accordance with agreement made before the corporation was organized. $10,000 of the stock was turned over to two

of plaintiff's sons and a third person in payment for patents, etc. The remaining $10,000 (less perhaps a small amount to another party) was to be sold to provide working capital. Defendant directly or indirectly loaned plaintiff personally $8,500, by three items, the first on September 3, 1907, the last in September, 1909. The California corporation was not prosperous, and in March, 1908, plaintiff sent it $500, and in February, 1909, plaintiff and defendant each sent $250. The corporate affairs becoming further involved, in August, 1910, plaintiff and defendant's agent went to California for the purpose of helping the corporation out of its financial difficulties, defendant agreeing to furnish money therefor; and during that month he sent the money accordingly, part of which was later returned to defendant. Plaintiff at the time owed defendant the $8,500 loaned with interest thereon, and in connection with the last California transaction there was an understanding between the parties that plaintiff should deed to defendant a farm near Cassopolis, which plaintiff owned. On September 23d, when defendant was at Cassopolis, plaintiff and his wife executed a warranty deed of the farm to defendant, for the stated consideration of $14,000. This deed was recorded September 29, 1910, at 9 a. m. Defendant claims it was delivered at Cassopolis September 23d; plaintiff claims the delivery was at Chicago on September 29th. The parties met at Chicago about (both say on) the last-named date; and at this meeting defendant paid plaintiff $1,000, giving also a writing dated September 29th acknowledging the receipt from plaintiff of the deed to the premises in question, "upon which there is yet due on the purchase price, the sum of $13,000." Following this $1,000 payment and the giving of the receipt, defendant paid plaintiff $500 and sent further moneys to California. In this suit plaintiff sought to recover on an alleged account stated at Chicago, September 29, 1910, of $7,883.08. Plaintiff claims that the settlement was arrived at on this basis: That previous to the organization of the California corporation plaintiff and defendant had agreed to share equally their profits or losses from the California venture, including such sums as either should pay on that account; that plaintiff had paid to or for the benefit of the corporation (including the $3,200 paid for his stock) $15,619.22; that defendant had similarly paid (including the $1,500 paid for his stock and defendant's California remittances made after September 29th, which plaintiff claims were included by anticipation in the settlement of that date) $10,053.70, one-half of this difference being $2,782.76; that plaintiff owed defendant on the direct loans referred to, with interest, $9,833.-18; and that, taking into account the two items last referred to, the farm at $14,000, the $1,000 payment made on September 29th, and a credit to plaintiff for bank stock previously assigned to defendant, there was left a balance due plaintiff of $7,883.08. Defendant denies any agreement to share profits or losses of the California corporation, asserting that his advances for the corporation, beginning with August, 1910 (and which seem to be the only payments for the corporation charged against plaintiff on defendant's alleged settlement of October, 1910), were made at plaintiff's request and on his agreement to turn over one of his farms to defendant; denies that any settlement was made or

attempted on September 29th, claiming that a settlement was in fact made October 10th thereafter, under which the defendant was found to owe plaintiff $475.32. The difference between the two alleged settlements, so far as here pertinent, is merely this: Defendant, besides denying liability for the balance of $2,782.76 on account of California transactions, charges plaintiff with $5,725 (net) on account of defendant's advances for California payments, after deducting $1,500 which defendant claims he voluntarily contributed at the alleged settlement of October 10th to help plaintiff out on his losses. The meritorious controversy here thus arises solely over the question of liability on account of California matters.

The testimony upon this issue, including the alleged respective settlements, was sharply in conflict; defendant also contending that, even if the settlement was made as claimed by plaintiff, no recovery could be had because the alleged agreement to share the California losses was (a) without consideration, and (b) within the statute of frauds, as an agreement not in writing to pay the debt of another.[1]

Judge Sessions, who presided at the trial, instructed the jury that in order for the plaintiff to recover it must be found: First, that there was actually a settlement between the parties on September 29, 1910, and an agreement then and there reached that there was due from defendant $7,883.08; and, second, that it was agreed between plaintiff and defendant, before the organization of the California corporation, that plaintiff and defendant would share profits or losses of their business venture. The recovery accorded with plaintiff's claim of settlement, taking into account the $500 subsequently paid.

A motion for new trial was denied, the court holding that there was sufficient evidence to warrant the jury in finding an agreement, as stated, to share the profits or losses of the California venture; and, further, that the instruction that the account stated could not be sustained in the absence of such finding was too favorable to defendant. On this review defendant insists upon the legal propositions referred to, also that there was no evidence of such agreement to submit to the jury.

[3, 4] It is not and cannot well be claimed that there is no substantial evidence that a settlement was agreed upon on September 29th, as claimed by plaintiff, resulting in a balance of $7,883.08 in his favor. We may add that the fact that the deed was actually recorded before the alleged date of settlement is not controlling as matter of law; it affects only the credibility of plaintiff's testimony, which presented a question of fact for the jury. Nor is it either claimed or open to claim that, if the alleged agreement to share profits or losses of the California business was made at or before the organization of the corporation, the defenses based on lack of consideration or the statute of frauds would be good; for in such case there would be a complete consideration for the alleged settlement, and defendant would not thereby

---

[1] Both parties agree that $13,000 did not remain owing to plaintiff on September 29th, plaintiff claiming that the receipt was given in the form stated because defendant could not at the time produce plaintiff's notes and obligations for his indebtedness; defendant, as stated, claiming that settlement was had at a later time.

be made answerable for the debt of another, but only for his own debt. Assuming then that such previous agreement is necessary to support the account stated, the important question is whether there was evidence to support a finding of such agreement.

[5] There is no written evidence that such agreement was made; the receipt given by the corporation to defendant for $1,000 as payment on his stock (before the company was organized) throws no light upon the question, unless as showing an agreement that he and plaintiff were each to hold one-sixth of the stock, the former on paying $500 more, the latter on paying $1,000 further (he had already paid $2,200). Plaintiff testified, however, that the California corporation was discussed at great length between himself and defendant previous to its organization, that defendant participated in the meeting at which the agreement was made to form the corporation, and that defendant expressed himself as thinking "it would win." Plaintiff further testified that in the conversation previous to the incorporation "the capital stock was talked about as $20,000, $25,000, or $30,000, and that Lowitz would become one of the partners equal with myself"; that after plaintiff and defendant's agent returned from California in September, 1910, defendant asked what his half of the liabilities would be, saying he proposed to bear his one-half just as he said he would. In testifying to the settlement in Chicago on September 29th, plaintiff said "it had been understood all the time that I was to have credited me my advancements and he to have credit for his advancements"; that the figuring was done from statements from the corporate books, taken by defendant's bookkeeper, and that they showed the advances "I and he had made from time to time to the company"; that among such items were the $3,200 paid by plaintiff (presumably the stock payments) "prior to our trip to California." the amount including an item of "$2,200 when we had the arrangement in Cassopolis before we went to California" (apparently meaning previous to the incorporation), and $9,186.62 of further amounts paid by plaintiff "as per the books of the concrete company." It also appears by defendant's testimony that the first $500 sent by him to California, in March, 1908 (perhaps four months after the incorporation), was so sent under plaintiff's agreement to repay one-half the amount; and that the $250 sent in February, 1909, was under an arrangement that plaintiff should send a like amount.

Plaintiff's wife testified that on the day the deed was made defendant stated "that he expected to share his part of the losses in California dollar for dollar with Kimmerle," and that in connection with the arrangement for the deed defendant said that the amount plaintiff owed him was some $6,000, and that "there would be something like $8,000 coming to us" (the alleged account stated approximated that amount). The deputy register of deeds, who was plaintiff's daughter, testified that:

In the register's office on the day the deed was made defendant said "he intended to share with father—certainly he intended to share with father the losses in the company out there. * * * I do not remember so much what was said about the delivery of the deed., I know that Lowitz agreed to stand dollar for dollar with father, and it was all in just an intimate transaction,

sort of a family affair. I mean in the California matter. Lowitz always said that he would share with father, in whatever father did he was with him."

Another daughter, also present at the abstract office, says she heard defendant say "he was going to share equally, of course he would stand by Charlie for everything. He said he would share dollar for dollar all the losses." The record contains abundant testimony in denial of the alleged previous agreement, and tending to show that plaintiff took an especial interest in the California enterprise for the sake of his sons, and that defendant's later activity in contributing to the corporate losses was due to his liability as a stockholder under the California statutes.

While the testimony as to the greater part of defendant's alleged assertions and admissions that he was to share losses equally with plaintiff was perhaps intended to relate to an agreement subsequent to the formation of the original venture, and perhaps to an agreement when the deed was promised, yet, taking the entire situation into account (including the fact that testimony of such admissions was not for the most part attempted to be so explained, but was generally denied absolutely, and the testimony of actual settlement on the basis of plaintiff's present claim), we cannot say there was no substantial testimony from which the jury, who saw and heard the witnesses, might properly find the fact of previous agreement; especially as the testimony is returned largely in narrative form, and in view of the further fact that the presiding judge, who also had seen and heard all the witnesses, was impressed that, while the evidence of previous agreement "was neither very convincing nor entirely satisfactory, it was sufficient to warrant the jury in finding that such an agreement was made." This conclusion should not be disregarded unless shown to be clearly unfounded, and we are not prepared to so say. We think therefore the court did not err in submitting the case to the jury.

This conclusion makes it unnecessary to consider whether the charge was too favorable to defendant in making a previously existing liability on defendant's part to pay the California losses necessary to the validity of the account stated.

3. We have considered the remaining assignments, so far as discussed orally or in brief, and think no substantial error is shown.

The judgment of the District Court is accordingly affirmed, with costs.